JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Benjamin H. Bloom, M.D.

## DEFENDANTS

AXA Equitable Life Insurance Company

**(b)** County of Residence of First Listed Plaintiff  Montgomery, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  New York, NY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jerrold V. Moss, Esq. (Astor Weiss Kaplan & Mandel, LLP)
The Bellevue, Suite 600    200 S. Broad Street
Philadelphia, PA 19102    (215) 790-1200

Attorneys *(If Known)*
Steven J. Schildt, Esq. (Post & Schell, P.C.)
Four Penn Center, 13th Fl.    1600 John F. Kennedy Blvd.
Philadelphia, PA 19103    (215) 587-1089

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Section 1332

Brief description of cause:
Insurance contract and insurance bad faith action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
≥ 75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
05/30/2019

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 1103 Berwind Road   Wynnewood, PA 19096-2319

Address of Defendant: _____ 1290 Avenue of the Americas   New York, NY 10104

Place of Accident, Incident or Transaction: _____ 1103 Berwind Road   Wynnewood, PA 19096-2319

---

**RELATED CASE, IF ANY:**

Case Number: _____     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/30/2019     _signature_     Attorney-at-Law / Pro Se Plaintiff     79011     Attorney I.D. # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Steven J. Schildt, Esq. _____, counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 05/30/2019     _signature_     Attorney-at-Law / Pro Se Plaintiff     79011     Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN H. BLOOM, M.D. | ) | |
| Plaintiff | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. _____ |
| AXA EQUITABLE LIFE INSURANCE | ) | |
| COMPANY | ) | |
| Defendant | ) | |

## CASE MANAGEMENT TRACK DESIGNATION FORM

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| | | |
|---|---|---|
| _5/30/2019_ | Steven J. Schildt, **Attorney-at-law** | Defendant |
| **Date** | | **Attorney for** |
| _(215) 587-1089_ | _(215) 587-1444_ | sschildt@postschell.com |
| **Telephone** | **FAX Number** | **E-mail Address** |

**(Civ. 660) 10/02**

**POST & SCHELL, P.C.**                          Attorneys for Defendant
BY: STEVEN J. SCHILDT, ESQ.
I.D. # 79011
BRYAN M. SHAY, ESQ.
I.D. # 205953
1600 JFK BLVD., 13TH FLOOR
PHILADELPHIA, PA  19103
PHONE: 215-587-1089
E-MAIL: sschildt@postschell.com

| | |
|---|---|
| BENJAMIN H. BLOOM, M.D. ) | IN THE COURT OF COMMON PLEAS |
| Plaintiff ) | PHILADELPHIA COUNTY |
| ) | |
| vs. ) | APRIL 2019 TERM, NO. 004135 |
| ) | |
| AXA EQUITABLE LIFE INSURANCE ) | |
| COMPANY ) | |
| Defendant ) | |

## <u>DEFENDANT'S NOTICE OF REMOVAL</u>

TO:    Jerrold V. Moss, Esq.
       Astor Weiss Kaplan & Mandel, LLP
       The Bellevue, Suite 600
       200 S. Broad St.
       Philadelphia, PA 19102

     Defendant has filed a Notice in the United States District Court for the Eastern District of Pennsylvania for removal of a civil action pursuant to 28 U.S.C. §1441, *et seq.*, now pending in the Court of Common Pleas for Philadelphia County.  Said case qualifies under diversity jurisdiction pursuant to 28 U.S.C. §1332.  Specifically, the parties are of diverse citizenship and the amount in controversy as alleged in the complaint is more than $75,000.  Defendant has also filed in the Eastern District of Pennsylvania a copy of the complaint served upon it.

                                            **POST & SCHELL, P.C.**

                          **BY:**         *Steve Schildt*

                                    **STEVEN J. SCHILDT, ESQ.**
                                    **BRYAN M. SHAY, ESQ.**
**DATE:  5/30/19**                    Attorneys for Defendant
                                    1600 JFK Blvd., 13th Floor
                                    Philadelphia, PA 19103
                                    Phone: 215-587-1089
                                    E-mail:sschildt@postschell.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN H. BLOOM, M.D. | ) | |
| Plaintiff | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. _____ |
| AXA EQUITABLE LIFE INSURANCE | ) | |
| COMPANY | ) | |
| Defendant | ) | |

### DEFENDANT'S NOTICE OF REMOVAL

1.     On May 3, 2019, Defendant AXA Equitable Life Insurance Company ("AXA") was served a copy of Plaintiff's Complaint.  A copy of the Complaint is attached hereto.

2.     This Court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.

3.     Plaintiff Benjamin H. Bloom, M.D. is a citizen of Pennsylvania.  *See* Complaint at ¶ 1.

4.     AXA is a citizen of New York, as it is incorporated in New York and also has its principal place of business in New York.  *See* Complaint at ¶ 2.  *See also* 28 U.S.C. § 1332(c)(1) (stating that a corporation shall be deemed to be a citizen of any state in which it has been incorporated, as well as the state in which it has its principal place of business).

5.     Because Plaintiff is a citizen of Pennsylvania and AXA is a citizen of New York, there is complete diversity of citizenship amongst the parties.

6.     Plaintiff's Complaint concerns the handling of a claim for disability benefits under three policies issued to Plaintiff by AXA, which was formerly known as The Equitable Life Assurance Society of the United States (the "Disability Policies").  *See* Complaint at ¶¶ 4-5.

7.     Plaintiff alleges that he became entitled to total and residual (partial) disability benefits under the Disability Policies as a result of an arthritic condition, and that he and AXA subsequently entered into a purported settlement agreement regarding same. *See id.* at ¶¶ 6-18.

8.     Plaintiff further alleges that AXA failed to perform under the purported settlement agreement, in that AXA included Plaintiff's surrender of the Disability Policies as a term of the settlement of Plaintiff's claim. *See id.* at ¶¶ 19-21.

9.     Count One of Plaintiff's Complaint, which is entitled "Enforcement of the Settlement Agreement," alleges that the purported settlement agreement between Plaintiff and AXA required AXA to pay Plaintiff $30,000, and contained no agreement as to the surrender of any of the Disability Policies. *See id.* at ¶¶ 22-26.

10.    In Count One, Plaintiff demands that the Court order specific performance of the purported settlement agreement, and that it direct AXA to pay Plaintiff $30,000 plus interest. *Id.* at Count One, *ad damnum* clause.

11.    Count Two of Plaintiff's Complaint, which is entitled "Punitive Damages, Fees and Costs Pursuant to the 'Bad Faith Act,'" alleges a claim for insurance bad faith under Pennsylvania's bad faith statute, 42 Pa. C.S. § 8371. *Id.* at ¶¶ 27-58.

12.    In Count Two, Plaintiff demands that the Court award Plaintiff an unspecified amount of damages pursuant to § 8371, including statutory attorneys' fees, statutory punitive damages, and statutory costs and interest.

13.    Generally, the amount in controversy is evaluated by looking to the demand for relief in the complaint. *See, e.g., Samuel-Bassett v. Kia Motors America, Inc.*, 357 F.3d 392, 398-99 (3d Cir. 2004).

14.     Where, however, the claim for damages is not specific as to the amount, "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993).

15.     In addition, where the plaintiff does not specifically aver in the complaint that the amount in controversy is less than the jurisdictional minimum, removal should be permitted unless it appears to a legal certainty that the plaintiff cannot recover the jurisdictional minimum. *See Samuel-Bassett*, 357 F.3d at 397-98; *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).

16.     Plaintiff's bad faith claim (Count Two) alleges an entitlement to the damages available under § 8371, which include attorneys' fees.  *See* 42 Pa. C.S. § 8371; *Hook v. Progressive Cas. Ins. Co.*, 2008 U.S. Dist. LEXIS 68985, at **7-10 (M.D. Pa. Aug, 18, 2008).

17.     Where attorneys' fees are available by operation of a statute such as § 8371, the recovery of such sums is to be included in the calculation of damages for purposes of determining the amount in controversy. *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *see also Morris v. Bankers Life & Cas. Co.*, 2012 U.S. Dist. LEXIS 23952, at *5 (E.D. Pa. Feb. 23, 2012) ("attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action."); *Stehle-Rosellini v. Allstate Corp.*, 2010 U.S. Dist. LEXIS 5709, at **11-12 (W.D. Pa. Jan. 25, 2010) (same).

18.     Because § 8371 also permits the recovery of punitive damages, these damages must also be included in the calculation of damages for purposes of determining the amount in controversy. *See, e.g., Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004); *Hook*, 2008 U.S.

Dist. LEXIS 68985, at **7-10; *Fine v. State Farm Fire & Cas. Co.*, 1993 U.S. Dist. LEXIS 7682, at **3-4 (E.D. Pa. June 11, 1993).

19.     Given the availability of statutory punitive damages and statutory attorneys' fees under § 8371, it cannot be said "to a legal certainty" that Plaintiff cannot recover the jurisdictional minimum of $75,000 in Count Two alone.  *See Samuel-Bassett*, 357 F.3d at 397-98; *see also Frederico v. Home Depot*, 507 F.3d 188, 196-97 (3d Cir. 2007) (applying *Samuel-Bassett* where the complaint does not specifically aver that the amount in controversy does not exceed the $75,000 amount in controversy requirement).

20.     Furthermore, for the purpose of calculating the amount in controversy, the damages claimed in the separate contract and statutory bad faith claims alleged by Plaintiff must be aggregated, as each claim sets forth distinct legal theories and requires differing burdens of proof, while also allowing for separate recoveries of damages.  *See, e.g., Brown v. Liberty Mut. Fire Ins. Co.*, 2006 U.S. Dist. LEXIS 76139, at *8 (E.D. Pa. Oct. 19, 2006) (holding that plaintiff's demand of $50,000 each for a breach of contract and bad faith claim satisfied amount in controversy requirement); *see also Miller v. Progressive Cas. Ins. Co.*, 2008 U.S. Dist. LEXIS 32074, at **6-7 (M.D. Pa. Apr. 17, 2008) (aggregating amount demanded in breach of contract claim with damages available for bad faith); *Kidd v. Prudential Ins. Co. of Am.*, 2008 U.S. Dist. LEXIS 2934, at **6-7 (M.D. Pa. Jan. 15, 2008) (holding that plaintiff's demand of $35,000 for contract count and $50,000 for bad faith count satisfied amount in controversy requirement); *Ketz v. Progressive N. Ins. Co.*, 2007 U.S. Dist. LEXIS 43245, at **8-9 (M.D. Pa. June 14, 2007) (holding that bad faith and breach of contract are "not alternative bases for recovery and can be aggregated to calculate the amount in controversy.").

21.     Given Plaintiff's demand for $30,000 "with interest" in Count One and his open-ended demand for statutory bad faith damages in Count Two, it cannot be said "to a legal certainty" that Plaintiff cannot—in the aggregate—recover the jurisdictional minimum of $75,000 in this action.

22.     Accordingly, the instant action satisfies diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1332 because all parties are of diverse citizenship and the amount in controversy—that is, "a reasonable reading of the value of the rights being litigated"—as alleged by Plaintiff is in excess of $75,000.

23.     The United States District Court for the Eastern District of Pennsylvania is the District Court having jurisdiction over this matter, as the instant civil matter was originally filed in the Court of Common Pleas of Philadelphia County.

24.     Defendant's Notice of Removal has been filed within 30 days of service of the Complaint and is therefore timely under 28 U.S.C. §1446(b).

25.     As required under 28 U.S.C. § 1446(d), Defendant has also filed copies of this Notice with the Prothonotary of the Court of Common Pleas of Philadelphia County in order to effect removal of this action.

26.     Simultaneous with the filing of this Notice of Removal, AXA has given a copy of this Notice to counsel for Plaintiff.

**WHEREFORE**, pursuant to 28 U.S.C. §§ 1441 and 1446, AXA respectfully requests that the above-captioned matter, now pending in the Court of Common Pleas of Philadelphia County, be removed to the United States District Court for the Eastern District of Pennsylvania.

5

POST & SCHELL, P.C.

BY: _____

**STEVEN J. SCHILDT, ESQ.**
**I.D. # 79011**
**BRYAN M. SHAY, ESQ.**
**I.D. # 205953**
Attorneys for Defendant
1600 JFK Blvd., 13th Floor
Philadelphia, PA 19103
Phone: 215-587-1089
E-mail: sschildt@postschell.com

**DATE: 5/30/19**

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that the attached Removal Package has been served and filed this day via regular mail to the following person(s):

Jerrold V. Moss, Esq.
Astor Weiss Kaplan & Mandel, LLP
The Bellevue, Suite 600
200 S. Broad St.
Philadelphia, PA 19102

Prothonotary
Philadelphia County Court of Common Pleas
City Hall
1400 J.F.K. Blvd.
Philadelphia, PA 19107

 

 

**POST & SCHELL, P.C.**

**BY:** _____

**STEVEN J. SCHILDT, ESQ.**
**I.D. # 79011**
**BRYAN M. SHAY, ESQ.**
**I.D. # 205953**
Attorneys for Defendant
1600 JFK Blvd., 13th Floor
Philadelphia, PA 19103
Phone: 215-587-1089
E-mail: sschildt@postschell.com

**DATE:  5/30/19**

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| **APRIL 2019** | **004135** |
| E-Filing Number: 1904065749 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| BENJAMIN H. BLOOM MD | AXA EQUITABLE LIFE INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1103 BERWIND ROAD<br>WYNNEWOOD PA 19096 | 1290 AVENUE OF THE AMERICAS<br>NEW YORK NY 19096 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | [X] Complaint    [ ] Petition Action    [ ] Notice of Appeal<br>[ ] Writ of Summons    [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 10 - CONTRACTS OTHER |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| | **FILED**<br>**PRO PROTHY**<br><br>APR **29** 2019<br><br>**A. SILIGRINI** | YES          NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: BENJAMIN H BLOOM MD

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| JERROLD V. MOSS | 200 SOUTH BROAD STREET<br>SUITE 600<br>PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)790-1200 | (215)790-1298 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 4128 | jmoss@astorweiss.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *JERROLD MOSS* | Monday, April 29, 2019, 11:18 am |

FINAL COPY (Approved by the Prothonotary Clerk)

*Filed and Attested by the Office of Judicial Records 29 APR 2019 11:18 am A. SILIGRINI*

**JERROLD V. MOSS, ESQ.**
Attorney No. 04128
**c/o Astor Weiss Kaplan & Mandel, LLP**
The Bellevue, Suite 600
200 S. Broad Street
Philadelphia, PA  19102
tel:  (215) 790-1200
*fax: (215) 790-1298*
jmoss@astorweiss.com

Attorney for plaintiff Benjamin H. Bloom, M.D.

This is not an Arbitration Case

JURY TRIAL DEMANDED

**BENJAMIN H. BLOOM, M.D**
1103 Berwind Road
Wynnewood, PA 19096-2319

**V.**

**AXA EQUITABLE LIFE INSURANCE COMPANY**
1290 Avenue of the Americas
New York, NY 10104

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PA

CIVIL ACTION  - LAW and EQUITY

COMPLAINT

NO.

Notice

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER AND INFORMATION SERVICE

1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238 – 6333
TTY (215) 451-5197

Aviso

Le han demandado a usted en la corte. Si usted quiere defend-erse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o noti-ficación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATA-MENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE F\FILADELFIA

Servicio De Referencia E Información Lega

l1101 Market Street, 11th Floor

Filadelfia, Pennsylvania 19107

(215) 238-6333   TTY (215) 451 - 6197

Case ID: 190404135

**JERROLD V. MOSS, ESQ.**
Attorney No. 04128
**c/o Astor Weiss Kaplan & Mandel, LLP**
The Bellevue, Suite 600
200 S. Broad Street
Philadelphia, PA 19102
tel: (215) 790-1200
*fax: (215) 790-1298*
jmoss@astorweiss.com

Attorney for plaintiff Benjamin H. Bloom, M.D.

This is Not an Arbitration Case

JURY TRIAL DEMANDED

| | |
|---|---|
| **BENJAMIN H. BLOOM, M.D** <br> 1103 Berwind Road <br> Wynnewood, PA 19096-2319 <br><br> **v.** <br><br> **AXA EQUITABLE LIFE INSURANCE COMPANY** <br> 1290 Avenue of the Americas <br> New York, NY 10104 | : IN THE COURT OF COMMON PLEAS OF <br> : PHILADELPHIA COUNTY, PENNSYLVANIA <br> : <br> : CIVIL ACTION  - LAW and EQUITY <br> : <br> : <br> : <br> : COMPLAINT <br> : <br> : NO. |

## COMPLAINT – CIVIL ACTION
### (Contract – 20000)

Plaintiff, by his attorney Jerrold Moss, Esq., seeks judgment against defendant in amount in excess of $50,000 upon causes of action whereof the following is a correct statement:

## *Short Summary of Claims*

**A.    _Specific Performance of Settlement Agreement_.**   Plaintiff, Dr Bloom, sought disability benefits under three insurance policies.  Defendant AXA denied the claims. The parties negotiated a settlement, but AXA refuses to pay the agreed $30,000, instead demanding that Dr. Bloom first surrender the policies, a requirement that was not part of the settlement agreement.  Dr. Bloom seeks to enforce the settlement agreement per its terms.

**B.    _Damages for Bad Faith_.**    Because of AXA's bad faith, in:

- misrepresenting the policies' provisions,
- demanding surrender of the policies after the claim was settled, and
- failing to amend a policy provision constantly held to be ambiguous,

Dr. Bloom seeks interest, punitive damages, costs and attorney fees pursuant to Pennsylvania's "*Bad Faith Act*" ("*Actions on Insurance Policies*"), 42 Pa.C.S.A § 8371.

*Parties*

1.    The plaintiff, **Benjamin H. Bloom, M.D.** ("**Dr. Bloom**"), is an individual residing at 1103 Berwind Road, Wynnewood, PA 19096 – 2319.

2.    The defendant, **AXA Equitable Life Insurance Company ("AXA"),** is a New York corporation registered to do business in the Commonwealth of Pennsylvania with its principal place of business located at 1290 Avenue of the Americas, New York, NY 10104.

*Venue*

3.    Venue in Philadelphia County is proper pursuant to Pa. R.C.P. No. 2179 (a)(2), as defendant AXA regularly conducts business in Philadelphia County.   Additionally, venue is proper pursuant to Pa. R.C.P. Nos. 2179 (a)(3) and (4), as this action seeks to enforce a settlement agreement which was negotiated and consummated via telephone and email on plaintiff's behalf by his counsel whose office then and now is located in Philadelphia County.

*The Relevant Background Facts*

4.    This matter involved three disability insurance policies (**"the Policies"**) which were issued to Dr. Bloom in 1983, 1985 and 1987, respectively, by The Equitable Life Assurance Society of the United States **("The Equitable").**

5.    The (French-based) AXA Group purchased a controlling interest in The Equitable in the 1990s, and the current name was later adopted.

6.    . Dr. Bloom is an ophthalmologist who had both a surgical and office practice.

7.    On or about May 9, 2016, Dr. Bloom was advised by his medical specialist that, because of his advanced arthritic condition, he must abandon his surgical practice.

8.   Upon being so advised, Dr. Bloom immediately ceased performing surgery in the hospital but was able to continue his office practice.

9.   Dr. Bloom filed a claim with AXA, seeking certain benefits under the total and residual (partial) disability provisions of the Policies.

10.   AXA denied the claims, and negotiations ensued.

### The Negotiations

11.   In 2018, AXA offered to pay $5,000, and later offered $20,000, in settlement of the claim, but with each offer its representative stated that Dr. Bloom had to surrender the two Policies remaining in force (as one of the three policies had since lapsed).

12.   Dr. Bloom rejected both cash offers, and also on both occasions his counsel advised that Dr. Bloom would not surrender the two Policies as part of any settlement.

13.   In February of 2019, in a telephone conversation, AXA's representative offered to pay $27,500 in settlement.  There was no discussion regarding surrender of the Policies.

14.   In a subsequent phone conversation with the AXA representative, counsel for Dr. Bloom rejected the $27,500 offer and offered to accept $35,000 in full settlement. Again, there was no discussion relating to surrender of the Policies.

### The Settlement

15.   On or about February 28, 2019, AXA's representative in a phone conversation with Dr. Bloom's counsel offered to pay $30,000 in full settlement.  There was no discussion relating to surrender of Policies.

16.   On that same day, Dr. Bloom's counsel sent an email to AXA's representative, confirming the last offer, stating:

> Ms. Freeman:  This will confirm that you have offered to pay $30,000 in full and final settlement.  As I said, I will convey this to Dr. Bloom.  I will not recommend acceptance, but of course this will be his decision to make.   I expect to be back to you within the next few days.
> Jim Moss

17.   Dr. Bloom agreed to accept the last offer, and on March 1, 2019, Dr. Bloom's counsel sent the following email to AXA confirming the settlement:

> Jaimie, Dr. Bloom has decided to accept your offer to pay $30,000 in full and final settlement.   I can prepare the release, but if you prefer your form, please forward to me.  Thank you. Jim

18.   With the delivery of this emailed acceptance of AXA's offer, a settlement agreement ("**the Settlement Agreement**") was consummated.

### AXA's Refusal to Perform the Settlement Agreement

19.   By email on March 4th, AXA's representative forwarded what she styled as a "Release Agreement," but it did not conform to the parties' Settlement Agreement, as it included a provision that would require Dr. Bloom to surrender his remaining two Policies. A copy of AXA's proposed "Release Agreement" is attached as **_Exhibit A_**.

20.   The following day, Dr. Bloom's attorney responded by email, stating that Dr. Bloom would not agree to amend the Settlement Agreement to provide for surrender of the remaining Policies, but did volunteer that Dr. Bloom would be willing to amend by waiving future claims for total disability benefits if the disability resulted from an acceleration of his existing arthritic condition.  A copy of that March 5th email is attached as ***Exhibit B***.

21.   By email of March 14th, AXA's representative responded, stating that ". . At this time, our offer remains in exchange for the surrender of all three policies and that is non-negotiable. . . "   A copy of that March 14th email is attached as ***Exhibit C***.

## COUNT ONE

### ENFORCEMENT OF THE SETTLEMENT AGREEMENT

22.   The aforesaid averments are incorporated by reference.

23.   The Settlement Agreement is clear and unambiguous: AXA offered to pay $30,000 to settle the claims, Dr. Bloom accepted that offer, and at that time the Settlement Agreement was concluded.

24.   The parties understood that a Release would be executed by Dr. Bloom confirming the terms of the Settlement Agreement, but it was not agreed that the Release would include AXA's earlier demands, refused by Dr. Bloom both times it had been raised, that he surrender the two remaining Policies.

25.   Dr. Bloom believes and therefore avers that AXA knew, at the time its last offer was made, and when the offer was accepted and the Settlement Agreement thus consummated, that Dr. Bloom had no intention of surrendering his Policies and had never agreed to do so.

26.    If AXA "silently intended" that a surrender of Policies would be part of the settlement, this would have been its unilateral mistake, because Dr. Bloom never so agreed, never entertained the possibility of surrendering the Policies, had made that clear in earlier discussions, and a surrender of Policies was never discussed in the final round of negotiations.

WHEREFORE, Dr. Bloom requests that this Honorable Court order Specific Performance of the Settlement Agreement and direct AXA to pay $30,000, with interest, to Dr. Bloom.

**COUNT TWO**

**PUNITIVE DAMAGES. FEES AND COSTS PURSUANT TO THE "BAD FAITH ACT"**

27.   The aforesaid averments are incorporated into Count Two by reference.

28.   AXA has acted in bad faith toward Dr, Bloom in three distinct ways:

A.   It fraudulently misrepresented the Policies' provisions relating to coverage;

B.   After reaching a settlement, it refused to pay as agreed unless Dr. Bloom surrendered his remaining two Policies;  and

C.   It sold policies to Dr. Bloom, and to other consumers, which, because of numerous court decisions, it knew contained an ambiguous definition of "*Total Disability*," a critical term in these disability insurance policies.

### Pennsylvania's *"Bad Faith Act"*

29.   Because AXA has acted in bad faith toward Dr. Bloom, as hereafter explained, Dr. Bloom is entitled, under what is commonly referred to as Pennsylvania's *"Bad Faith Act,"* to an award of interest, punitive damages, court costs and attorneys fees.

The Bad Faith Act provides:

### §8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1)  Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2)  Award punitive damages against the insurer.

(3)  Award court costs and attorney fees against the insurer.

42 Pa.C.S.A. §8371

### A.      *AXA Fraudulently Inserted New Language in Copies of the Policies It Provided to Dr. Bloom's Counsel*

30.   At the time Dr. Bloom first gave notice of his claim, he had not been able to locate full copies of the three Policies he purchased in the 1980s.

31.   Thereafter, at the request of Dr. Bloom's attorney, AXA forwarded what it indicated were recreated copies of the Policies as originally issued.

32.   Sometime later, Dr. Bloom was able to locate the Policies as originally issued to him, and he forwarded them to his counsel.

33.   Dr. Bloom's attorney subsequently became aware that AXA, on the copies of the 1985 and 1987 policies it had forwarded, had added language to the Declarations Pages which did not exist on those pages as originally issued.

34.   **Alteration of the 1985 policy**:   Following are the relevant portions of the Declarations Page as originally issued with the 1985 policy, and as falsely represented by AXA in 2017.   The language AXA added has been highlighted in **yellow**, but the *asterisks* on each end of that critical line were placed there by AXA on the copy it provided in 2017.

*As originally issued in 1985:*

```
   THE INSURED     BENJAMIN H BLOOM               JAN 21, 1985    EFFECTIVE DATE
                                                        PPA
MONTHLY INCOME     $500.00                        N 85 700 548    POLICY NUMBER
     FOR
TOTAL DISABILITY                                       39 M       ISSUE AGE & SE:


ELIMINATION PERIOD -  30 DAYS

MAXIMUM BENEFIT PERIOD
     FOR ACCIDENT TOTAL DISABILITY      - LIFETIME OF INSURED
     FOR SICKNESS TOTAL DISABILITY
        COMMENCING BEFORE AGE 60        - LIFETIME OF INSURED
        COMMENCING AT AGE 60 OR LATER   - TO AGE 65
```

**As altered by AXA when provided to Dr. Bloom's counsel in 2017:**

```
   THE INSURED     BENJAMIN H BLOOM               JAN 21, 1985    EFFECTIVE DATE
                                                        ASO
MONTHLY INCOME     $500.00                        MN 85 700 548   POLICY NUMBER
     FOR
TOTAL DISABILITY                                       39 M       ISSUE AGE & SEX


ELIMINATION PERIOD -  30 DAYS

MAXIMUM BENEFIT PERIOD
     FOR ACCIDENT TOTAL DISABILITY      - LIFETIME OF INSURED
     FOR SICKNESS TOTAL DISABILITY
        COMMENCING BEFORE AGE 60        - LIFETIME OF INSURED
        COMMENCING AT AGE 60 OR LATER   - TO AGE 65
   * FOR RESIDUAL DISABILITY            - TO AGE 65 *
```

A copy of the full Declarations Page, as issued in 1985, is attached as **Exhibit D-1**.
A copy of that full page, as altered by AXA in 2017, is attached as **Exhibit D-2**.

35.   **Alteration of the 1987 policy**:   Following are the relevant portions of the
Declarations Page as originally issued with the 1987 policy, and as falsely represented by
AXA in 2017. Again, the language AXA added is highlighted in **yellow**, but the *asterisks* on
each end of that critical line were placed there by AXA on the copy it provided in 2017.

### *As originally issued in 1987:*

```
   THE INSURED    BENJAMIN H BLOOM         FEB  4, 1987      EFFECTIVE
                                                      PPA
   MONTHLY INCOME   $2,125.00              H 87 704 752      POLICY NU
        FOR
   TOTAL DISABILITY                             41 M         ISSUE AGE


   ELIMINATION PERIOD -   30 DAYS

   MAXIMUM BENEFIT PERIOD
       FOR ACCIDENT TOTAL DISABILITY      - LIFETIME OF INSURED
       FOR SICKNESS TOTAL DISABILITY
          COMMENCING BEFORE AGE 60        - LIFETIME OF INSURED
          COMMENCING AT AGE 60 OR LATER   - TO AGE 65
```

### *As altered by AXA when provided to Dr. Bloom's counsel in 2017:*

```
   THE INSURED    BENJAMIN H BLOOM         FEB  4, 1987      EFFECTIVE
                                                      ASO
   MONTHLY INCOME   $2,125.00              MN 87 704 752     POLICY NU
        FOR
   TOTAL DISABILITY                             41 M         ISSUE AGE


   ELIMINATION PERIOD -   30 DAYS

   MAXIMUM BENEFIT PERIOD
       FOR ACCIDENT TOTAL DISABILITY      - LIFETIME OF INSURED
       FOR SICKNESS TOTAL DISABILITY
          COMMENCING BEFORE AGE 60        - LIFETIME OF INSURED
          COMMENCING AT AGE 60 OR LATER   - TO AGE 65
   * FOR RESIDUAL DISABILITY              - TO AGE 65 *
```

A copy of the full Declarations Page, as issued in 1987, is attached as **Exhibit E-1**.
A copy of that full page, as altered by AXA in 2017, is attached as **Exhibit E-2**.

36.   As can be seen, these alterations were inserted by AXA into the section entitled *Maximum Benefit Period.*  This added language expressly provided that the benefit period for a Residual Disability claim ended at age 65.

37.   When originally issuing the Policies, AXA violated the mandate of the Pennsylvania Insurance Code which required that any <u>reduction in benefits</u>, <u>based on reaching a certain age</u>, <u>must</u> be set out on the Declarations Page.   The Code provides:

> **§ 89.82   Miscellaneous Policy Provisions.**
>
> (a) If the policy provides for *a reduction in benefits* because of the attainment of a *specified age limit, reference thereto shall be set forth on the first  or specifications page . . .*
>
> *31 Pa. Code § 89.82*   (emphasis added)

38.   This was material, because one of Dr. Bloom's claims was that he was entitled to Residual Disability benefits even though he was older than 65 when the disability began.

39.   It is clear that the language AXA improperly added to the Declaration Pages in 2017 was intended to belatedly correct for its violation of the Insurance Department regulations, and was intended to discourage Dr. Bloom from pursuing any claim for Residual Disability benefits.

40.   Although it hardly should require legal authority to support the proposition that AXA's conduct was egregious, nonetheless it is clear that AXA's action violated the public policy established by statute and regulation:

a.   By <u>statute</u>, unfair or deceptive insurance practices are prohibited.   The first prohibited action listed in that statutory provision which, if performed with frequency would constitute an unfair settlement practice, is "[m]isrepresenting pertinent facts or policy or contract provisions relating to coverages at issue." *40 P.S. §1171.5(a)(1)(i)* While  obvious,  this does represent a statement of public policy.

b.   By <u>regulation</u>, the Pennsylvania Insurance Department, in the Code section entitled *Misrepresentation of Policy Provisions,* advises that "[a]n insurer or agent may not fail to fully disclose to first-party claimants benefits, coverages or other provisions of an insurance policy . . . when . . .[they] are pertinent to a claim." *31 Pa. Code § 146.4.*   This too represents a clear statement of public policy.

### B.   *In Bad Faith, AXA Demanded that Dr. Bloom Surrender His Two Remaining Policies*

41.   The second bad faith action by AXA was its demand, after settlement was concluded, that Dr. Bloom surrender his two remaining Policies, as it stated in its March 14, 2019 email:   "*At this time, our offer remains in exchange for the surrender of all three policies and that is non-negotiable. . , ,*"     See, <u>**Exhibit C.**</u>

42.   Since the issuance of the first policy in 1983, Dr. Bloom has paid approximately $120,000 in premiums to maintain the Policies. This $120,000, plus investment income and interest earned thereon over the 31 to 35 year period, has essentially been "profit" to AXA.

43.   It is acknowledged that Dr. Bloom did receive value in exchange for these premium payments, in that he was protected against the risk of loss of income due to total or residual disability.   But from the outset, Dr. Bloom expected and understood that for as long as he paid premiums, he would continue to have such protection.   AXA sought to deprive him of that continuing protection by demanding return of the Policies.

44.   There was no justifiable reason for AXA's demand, after the Settlement Agreement was reached, that the Policies be surrendered, notwithstanding Dr. Bloom's desire to continue paying premiums in exchange for the continuing protection against total

disability caused by injury, or sickness beyond his current physical condition, that would render him unable to ".. engage in the substantial and material duties" of his <u>office</u> practice.

45.   In the absence of any reasonable justification for insisting on surrender of the Policies, Dr. Bloom believes and therefore avers that AXA has made that demand for one or two or all of the following improper reasons:

a.   ***<u>Playing the Odds Regarding Likelihood of Future Injury or Sickness.</u>*** AXA may believe that Dr. Bloom, and other Pennsylvania insureds in similar circumstances, having once suffered an injury or illness of sufficient severity to form a basis for a disability claim, are more prone, or more likely, to suffer another disabling illness or injury than other insureds who had not yet been so afflicted.   Terminating the Policies eliminates that risk.

b.   ***<u>Calculated Business Decision</u>***.   AXA may have concluded that in the event of a future claim where the entitlement to benefits is arguable, Dr. Bloom, having demonstrated a willingness to persist in the face of a denial, may be more likely to pursue the new claim than other insureds who might just accept AXA's denial.   Surrender of the Policies eliminates that risk.   That may be AXA's general policy to reduce its exposure.

c.   ***<u>Vengeance or retaliation</u>***.   In this case, and as a matter of general policy in all such cases, AXA may have demanded surrender of policies because Dr. Bloom, and other insureds in his position, had the temerity to retain counsel and persistently pursue benefits that AXA denied, causing AXA to sustain costs of defense.

46.   Therefore, as there is no plausible legitimate justification for AXA's demand tor surrender of the Policies, and thus its motivation for such demand being one or more of the unacceptable reasons noted in the preceding paragraph, or for some other improper reason that may become known through discovery proceedings, AXA has acted in bad faith toward Dr. Bloom and has triggered his right to recover interest, fees, costs, and punitive damages under Pennsylvania's *Bad Faith Act* (42 Pa.C.S.A. §8371).

**C.   *In Bad Faith, AXA Sold Policies That it Knew Contained an Ambiguous Definition of the Critical Term "Total Disability," and in Bad Faith it Also Failed to Amend Existing Policies to Eliminate the Ambiguity***

47.   The Policies issued by The Equitable to Dr. Bloom, and policies sold by The Equitable or AXA to other insureds in Pennsylvania, and to insureds in almost all other states, include the following definition of *total disability*:

> **TOTAL DISABILITY** *means your inability due to injury or sickness to engage in **the substantial and material duties** of your regular occupation.* It will not be considered to exist for any time you are not under the regular care and attention of a doctor. (emphasis added)

48.   The question then is:  **to what extent** must one be unable to perform those **substantial and material duties**?  Must the insured be unable to perform every single

one of those duties?   Or as some courts have questioned: "Some of them?"   "Most?" "The most important part?"   "The vast majority?"   "More than one?"   "A significant amount?"   "A significantly great amount?"   "At least one, if not many?"   Hence, the conclusion that the clause is ambiguous, and as noted hereafter many courts have so held.

49.   While a majority of courts have not found this language to be ambiguous, at least nine courts (U.S. Circuit Courts of Appeals, U.S. District Courts, and state appellate courts) have held that this exact clause, or one almost identical to it, is ambiguous. Citations to those decisions are set out at **Exhibit F.**

50.   Importantly, The Equitable <u>itself</u> was the defendant in a case interpreting this exact language.  In a challenge to a policy it wrote in Georgia, The Equitable's definition of *Total Disability"* was held to be ambiguous by the U.S. Court of Appeals for the 11th Circuit. <u>See</u>, *Giddens v. Equitable Life Assurance Soc'y*, 445 F. 3d 1286 (11th Cir. 2006).

51.   Even without regard to the merit of such claims, the mere fact that such a definition has been challenged as ambiguous in many hundreds of cases should have been enough for AXA, in the exercise of the good faith it owed to Dr. Bloom and to all other insureds, to have clarified its definition of *total disability* so as to remove all ambiguity.

52.   AXA could easily have modified the definition in order to eliminate any ambiguity.  Attached at **Exhibit G** is a list of 24 insurance companies that provided a far clearer definition of *total disability,* and the actual language used in each case is noted.

53.   In fact, The Equitable or AXA itself ***actually did*** utilize an improved, non-ambiguous definition in policies it wrote in at least four other states: Illinois, Georgia, Florida and Arizona.  It chose not to use such an improved definition in its Pennsylvania

policies. Citations to the cases in those states where Equitable or AXA chose to utilize an improved definition of the critical term *"total disability"* are set forth in **Exhibit H.**

54.  The value that would accrue to Dr. Bloom and all other Pennsylvania insureds if AXA, in its obligated exercise of good faith, had clarified the definition of *total disability* is obvious:  Dr. Bloom and other Pennsylvania insureds would have more quickly known whether a valid claim existed.  And if it were then clear that their injury or illness did not qualify, they would have avoided the aggravation and time involved in asserting a claim, and they would have avoided the necessity of retaining counsel and the payment of attorney's fees.

55.  Thus, it is clear that AXA:

    a.  was well aware of the ambiguity, having been sued itself on a number of occasions and, being a leader in the industry, knowing of the hundreds of suits challenging as ambiguous the identical or essentially the same definition of *total disability;*

    b.  was well aware that it could easily have reduced or eliminated the ambiguity in Dr. Bloom's Policies and the policies of all of its other Pennsylvania insureds, having the example of the language used by many other companies, and especially having done so itself in at least four other states.

56.  Dr. Bloom is not required to explain AXA's motivation in this failure to exercise good faith toward him and other Pennsylvania insureds, but he believes and therefore avers that this bad faith refusal to correct the definition of *total disability* was a knowing decision as it benefited AXA in its marketing of disability policies, as set forth in the following paragraph.

57.  If AXA had, in an exercise in good faith, changed the definition to make clear what AXA contends was intended, to wit, that an insured would <u>not</u> be considered *totally*

*disabled* if able to perform any *single important part* of the occupation, it would have made it more difficult to sell policies to applicants such as Dr. Bloom who wanted to be protected, without age restriction, against the risk of having to abandon a major part of his profession or business while still able to continue another part of it.   Many reported cases involve medical providers who had to stop doing surgery while still able to conduct an office practice, trial lawyers who because of anxiety attacks or other problems had to stop trying cases in a courtroom although able to continue a general law practice, or business owners who might be rendered unable to personally sell or drive or perform other critical parts of a business although still able to supervise its operation.

58.  AXA's knowing failure to eliminate the ambiguity in the critical definition of *"total disability"* justifies Dr. Bloom's claim for damages under the *Bad Faith Act.*

WHEREFORE, because of AXA's acts of bad faith toward Dr. Bloom, in

- Demanding surrender of the two remaining Policies,

- Fraudulently altering the Declarations Pages of the Policies in order to gain an advantage in negotiating the claims, and

- Failing to properly define the critical term *"Total Disability"* when it knew that its definition was ambiguous,

Dr. Bloom asks that he be awarded the following damages pursuant to the provisions of the *Bad Faith Act,*

a.  Interest at 3% plus prime from the date his claim was made, and

b.  Punitive damages, and

c.  Court costs and attorney fees.

Jerrold V. Moss, Esq.
Attorney for plaintiff
Benjamin H. Bloom, M.D.

**VERIFICATION**

I, Benjamin H. Bloom, M.D., am the plaintiff in the foregoing complaint.  The facts therein alleged are true and correct to the best of my knowledge, information and belief.  I understand this verification is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

# RELEASE AGREEMENT

## RECITALS

AXA Equitable Life Insurance Company, formerly known as The Equitable Life Assurance Society of the United States ("AXA Equitable") has issued to me, Benjamin H. Bloom, of 1103 Berwind Road, Wynnewood, PA 19096, disability policy numbers 83720219, 85700548, 87704752 (the "Policies"). The Policies generally provide for the payment of disability benefits resulting from a disabling condition and all related disabling conditions.

I have made a claim for benefits under the Policies.

I have asked that AXA Equitable make a settlement proposal with respect to the benefits available under the Policies, and that proposal has been discussed with me. As a result of these discussions, an agreement has been reached between AXA Equitable and me. The terms and conditions of this agreement are set forth in this Release Agreement.

## RELEASE

In consideration of the payment to me of the sum of thirty thousand dollars and zero cents ($30,000.00), I do, for myself and for my heirs, beneficiaries, personal representatives and assigns, hereby fully, finally and unconditionally release and forever discharge AXA Equitable, its affiliates, its third party administrators, including Disability Management Services, Inc., and their directors, officers, employees, agents, reinsurers, successors and assigns (the "Released Parties") from any and all claims, demands, liabilities, agreements, costs, expenses, attorneys' fees, actions or causes of action of any nature whatsoever, known or unknown, fixed or contingent, arising out of or in any way related to the Policies or related to any acts taken by the Released Parties with respect to the administration, adjustment, investigation or settlement of any and all claims for benefits made under the Policies.

I understand and agree that this settlement is a compromise of a disputed claim and that the payment is not to be construed as an admission of liability by AXA Equitable or me and that said liability is, in fact, expressly denied.

I acknowledge that this payment is being made at my request in order to settle all claims, past, present and future, which have arisen or might otherwise arise under or in relation to the Policies and is made in full and complete satisfaction of all such claims. I acknowledge and understand that, as a result of the Release Agreement, the Policies have been validly cancelled. Therefore, I can no longer bring any claims for benefits under the Policies, regardless of whether the events giving rise to such claims have already occurred or will occur in the future.

In recognition of this Release Agreement and in exchange for the consideration specified above, I hereby surrender the Policies to AXA Equitable for cancellation and hereby waive, renounce and relinquish any and all claim of right to any non-cancelable feature of the Policies. If I have not attached the Policies to this Release Agreement, then I affirm that the Policies are lost but will promptly be returned to AXA Equitable if they are found.

Benjamin H. Bloom
AXA Equitable Life Insurance Company
Policy #'s: 83720219, 85700548, 87704752



EXHIBIT
A

Case ID: 190404135

I understand that there is a risk that subsequent to the execution of this Release Agreement I may incur or suffer losses, damages or injuries which are in some way caused by or related to matters which are the subject of this Release Agreement, but which are unknown or unanticipated at the time of the execution of this Release Agreement.  I understand that there is a risk that a loss or damage presently known may be or may become greater than I now expect or anticipate, or that I may discover facts different from those that I presently know or believe to be true.  Nevertheless, I agree to and hereby do release all claims which I may have or which may arise in the future against the Released Parties in connection with the Policies or with my surrender of the Policies.

I hereby acknowledge that I have been advised of the provisions of California Civil Code Section 1542, which provides as follows:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of execution of the release, which if known by him must have materially affected his settlement with the debtor."  I expressly waive the benefits of California Civil Code Section 1542 and also waive the benefits of any other applicable local, state or federal statute or common law that provides substantially similar benefits as California Civil Code Section 1542.

In further consideration of the aforesaid payment, I hereby warrant that I am the sole owner of the above mentioned Policies, demands and causes of action and that I have not assigned or transferred any interest in any of them.  I hereby expressly agree and undertake to indemnify and save entirely harmless the Released Parties from and against any and all claims, demands, actions, causes of action, liens, suits, damages, debts, liabilities, obligations, costs, expenses, and attorneys' fees arising from any matter released herein.

I have read each and every part of this Release Agreement and I am fully aware of its contents.  I acknowledge that no representations by any party being released hereby have induced me to make this settlement and that my execution of this document is my free and voluntary act and deed, done with full knowledge of the significance of this Release Agreement.   I further acknowledge and agree that this Release Agreement constitutes the entire agreement between me and the Released Parties and supersedes all prior agreements, whether written or oral, between me and any of the Released Parties, including the Policies themselves.  I also acknowledge that I have been advised of my right to be represented by counsel and have been so represented by Jerrold V. "Jim" Moss, Esq. of the law firm Astor, Weiss, Kaplan & Mandel, LLP with respect to the negotiation and execution of this Release Agreement.

Executed at: _____      Witnessed by:
                        **(City, State)**

Date: _____

                                                     _____
                                                          (Print Witness Name)

By: _____
              Benjamin H. Bloom                      _____
                                                          (Witness Signature)

Benjamin H. Bloom
AXA Equitable Life Insurance Company
Policy #'s: 83720219, 85700548, 87704752

Rev: 06/2017                    Page 2 of 2


EXHIBIT
A

**From:** Jerrold Moss
**Sent:** Tuesday, March 05, 2019 2:17 PM
**To:** 'Jaimie Freeman'
**Cc:** 'Benjamin Bloom'
**Subject:** RE: Bloom Release

Dear Jaimie:   Dr. Bloom cannot sign the release you forwarded because it contains a requirement that he surrender his policies.   First, this was not our agreement, and we will not concur in your proposed amendment.   Secondly, I suggest that AXA should not be expecting him to surrender the two remaining policies, given that he has been paying premiums to maintain them for about 35 years, and very high premiums for the last 8 years, and making those payments with the understanding that he could keep the policies in force for as long as he was practicing.

The conditions giving rise to the claims we have now settled would have no relevance at all if, for example, Dr. Bloom in the future were to become totally disabled as the result of an auto accident or a serious disease.  I would be willing to amend our agreement to provide that he could not make a total disability claim if his disability is caused by the worsening of his current condition.  And of course, he would agree that he could not file a claim for residual disability benefits under any circumstances.

If this is acceptable to you, please modify the release and Dr. Bloom will be pleased to execute it.   Thanks Jim

*Jerrold V. "Jim" Moss, Esq.*
Astor Weiss Kaplan & Mandel, LLP
The Bellevue, Suite 600
200 S. Broad Street
Philadelphia, PA 19102

**tel:  (215) 790 - 1200**
*fax: (215) 790 - 1298*
jmoss@astorweiss.com

This electronic mail transmission and any accompanying documents contain information belonging to the sender which may be confidential and legally privileged.  This information is intended only for the use of the individual or entity to whom this electronic mail transmission was sent as indicated above.  If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this transmission is strictly prohibited.  If you have received this transmission in error, please delete the message and call 215-790-1200 to let me know.  Thank you.



EXHIBIT
**B**

Case III  0040413

**From:** Jaimie Freeman [mailto:Jaimie_Freeman@di-mgmt.com]
**Sent:** Thursday, March 14, 2019 5:00 PM
**To:** Jerrold Moss
**Subject:** RE: Bloom Release

Good afternoon Mr. Moss,

Unfortunately, I did not receive your March 5, 2019 email until you forwarded it to me again today. I certainly would have responded to you promptly had I seen it earlier.

Your email surprises me, as I believed that we were on the same page regarding our settlement discussion, that the offer only applied to policy surrender. When I originally spoke with Frank Darras last year I made it clear that our offer at that time was not for a settlement of the claim, only the policies, and that we were not considering a claim settlement. At no time did I feel that the impression during our recent discussions was that we were negotiating a claim settlement either.

At this time, our offer remains in exchange for the surrender of all three policies and that is non-negotiable. If Dr. Bloom does not wish to accept this proposal, please notify us of his decision. Thank you.

Jaimie

*Jaimie Freeman, ALHC*
*Director of Claims*
*Ph: 800-883-0596 ext. 1011*
*Fax: 413-747-1545*
**DMS›**

🖃 Please consider the environment before printing this email.


EXHIBIT
C
Case ID: 04135

```
    THE INSURED     BENJAMIN H BLOOM          JAN 21, 1985    EFFECTIVE DATE
                                                    PPA
   MONTHLY INCOME   $500.00                  N 85 700 548    POLICY NUMBER
        FOR
 TOTAL DISABILITY                                   39 M     ISSUE AGE & SEX
```

ELIMINATION PERIOD — 30 DAYS

MAXIMUM BENEFIT PERIOD
    FOR ACCIDENT TOTAL DISABILITY     — LIFETIME OF INSURED
    FOR SICKNESS TOTAL DISABILITY
       COMMENCING BEFORE AGE 60     — LIFETIME OF INSURED
       COMMENCING AT AGE 60 OR LATER — TO AGE 65

### BENEFITS AND PREMIUMS TABLE

| BENEFITS | SEMI-ANNUAL PREMIUM | PREMIUM PERIOD |
|---|---|---|
| MONTHLY INCOME FOR TOTAL DISABILITY | $154.18 | TO AGE 65 |
| RESIDUAL 65 PLUS WAIVER INDEXING ADJUSTMENT 6% | 21.32 | TO AGE 65 |
| COST OF LIVING ADJUSTMENT — 6% ANNUALLY | 47.84 | TO AGE 65 |

FIRST PREMIUM          $223.34 DUE ON OR BEFORE DELIVERY OF POLICY

SUBSEQUENT PREMIUMS       $223.34 DUE JUL 21, 1985 AND EVERY 6 MONTHS
                       THEREAFTER DURING PREMIUM PERIOD

```
EXHIBIT
D-1
```

DATE OF ISSUE     JAN 22, 1985

Case ID: 190404135

THE INSURED     BENJAMIN H BLOOM            JAN 21, 1985      EFFECTIVE DATE
                                                     ASO
MONTHLY INCOME   $500.00                   MN 85 700 548      POLICY NUMBER
     FOR
TOTAL DISABILITY                                      39 M    ISSUE AGE & SE


ELIMINATION PERIOD - 30 DAYS

MAXIMUM BENEFIT PERIOD
     FOR ACCIDENT TOTAL DISABILITY      - LIFETIME OF INSURED
     FOR SICKNESS TOTAL DISABILITY
          COMMENCING BEFORE AGE 60      - LIFETIME OF INSURED
          COMMENCING AT AGE 60 OR LATER - TO AGE 65
  ✳ FOR RESIDUAL DISABILITY            - TO AGE 65 ✳

                    BENEFITS AND PREMIUMS TABLE

   BENEFITS                         SEMI-ANNUAL PREMIUM      PREMIUM PERIOD

MONTHLY INCOME FOR TOTAL DISABILITY         $154.18            TO AGE 65

RESIDUAL 65 PLUS WAIVER                       21.32            TO AGE 65
     INDEXING ADJUSTMENT 6%

COST OF LIVING ADJUSTMENT - 6% ANNUALLY       47.84            TO AGE 65

FIRST PREMIUM DUE ON OR BEFORE DELIVERY OF POLICY

SUBSEQUENT PREMIUMS        $223.34 DUE JUL 21, 1985 AND EVERY  6 MONTHS
                                 THEREAFTER DURING PREMIUM PERIOD


NOTE: THIS DECLARATION PAGE REFLECTS YOUR COVERAGE AS OF JUN 19, 2017
AND MAY NOT ACCURATELY REFLECT YOUR COVERAGE AT TIMES PRIOR TO THIS DATE.


                    DATE OF ISSUE    JUN 19, 2017
L24-3-718 SERIES 125    DIPL65    PAGE THREE    2017-06-19   2017-06-19 1055



THE INSURED    BENJAMIN H BLOOM          FEB  4, 1987    EFFECTIVE DATE
                                                 PPA
MONTHLY INCOME    $2,125.00              H 87 704 752    POLICY NUMBER
   FOR
TOTAL DISABILITY                              41 M    ISSUE AGE & SEX


ELIMINATION PERIOD - 30 DAYS

MAXIMUM BENEFIT PERIOD
    FOR ACCIDENT TOTAL DISABILITY    - LIFETIME OF INSURED
    FOR SICKNESS TOTAL DISABILITY
        COMMENCING BEFORE AGE 60    - LIFETIME OF INSURED
        COMMENCING AT AGE 60 OR LATER - TO AGE 65

                    BENEFITS AND PREMIUMS TABLE

    BENEFITS                        QUARTERLY PREMIUM*    PREMIUM PERIOD

MONTHLY INCOME FOR TOTAL DISABILITY        $365.42          TO AGE 65

RESIDUAL 65 PLUS WAIVER                      46.25          TO AGE 65
    INDEXING ADJUSTMENT 6%

COST OF LIVING ADJUSTMENT
AGE 40 TO 61  ANNUALLY  BASED ON CPI-U       81.19          TO AGE 65

FIRST PREMIUM        $492.86 DUE ON OR BEFORE DELIVERY OF POLICY

SUBSEQUENT PREMIUMS   $492.86 DUE MAY  4, 1987 AND EVERY  3 MONTHS
                        THEREAFTER DURING PREMIUM PERIOD



                    DATE OF ISSUE   APR 3, 1987
3-718   SERIES 127   DIPL65   PAGE THREE   NSD*   87-04-08  87-04-08 1029



```
THE INSURED      BENJAMIN H BLOOM            FEB  4, 1987    EFFECTIVE DATE
                                                       ASO
MONTHLY INCOME   $2,125.00                   MN 87 704 752   POLICY NUMBER
      FOR
TOTAL DISABILITY                                    41 M    ISSUE AGE & SEX
```

ELIMINATION PERIOD - 30 DAYS

MAXIMUM BENEFIT PERIOD
    FOR ACCIDENT TOTAL DISABILITY    - LIFETIME OF INSURED
    FOR SICKNESS TOTAL DISABILITY
       COMMENCING BEFORE AGE 60     - LIFETIME OF INSURED
       COMMENCING AT AGE 60 OR LATER - TO AGE 65
  FOR RESIDUAL DISABILITY          - TO AGE 65

BENEFITS AND PREMIUMS TABLE

| BENEFITS | QUARTERLY PREMIUM* | PREMIUM PERIOD |
|---|---|---|
| MONTHLY INCOME FOR TOTAL DISABILITY | $365.42 | TO AGE 65 |
| RESIDUAL 65 PLUS WAIVER | 46.24 | TO AGE 65 |
|   INDEXING ADJUSTMENT 6% | | |
| COST OF LIVING ADJUSTMENT | | |
|   4% TO 6%  ANNUALLY - BASED ON CPI-U | 81.19 | TO AGE 65 |

FIRST PREMIUM DUE ON OR BEFORE DELIVERY OF POLICY

SUBSEQUENT PREMIUMS        $492.85 DUE MAY  4, 1987 AND EVERY  3 MONTHS
                             THEREAFTER DURING PREMIUM PERIOD


NOTE: THIS DECLARATION PAGE REFLECTS YOUR COVERAGE AS OF JUN 19, 2017
AND MAY NOT ACCURATELY REFLECT YOUR COVERAGE AT TIMES PRIOR TO THIS DATE.

DATE OF ISSUE    JUN 19, 2017

127-3-718 SERIES 127    DIPL65    PAGE THREE   NSD*  2017-06-19  2017-06-19 1107


EXHIBIT
5-2

**The following courts found the definition of *total Disability,* identical or essentially the same as that used by The Equitable and AXA, to be ambiguous:**

*Dowdle v. Nat'l Life Ins. Co.,* 407 F.3d 967, 972 (8th Cir. 2005)

*Gammill v. Provident Life & Accident Ins. Co.,* 346 Ark, 161, 55 S.W. 3d 763 (2001)

*Giddens v. Equitable Life Assurance Soc'y, 445 F. 3d 1286 (11th Cir. 2006)*

*Oliver v. Nat'l Life Ins. Co.,* 2011 U.S. Dist. LEXIS 134640

*Pomerance v. Berkshire Life Ins. Co. of Am.,* 654 S.E. 2d 638 (2007)

*Ogborne v. UNUM Life Ins. Co. of Am.,* 2006 U.S. Dist. LEXIS 60880 (N.D. Ohio, Aug. 2006)

*Phelps v. UNUM Provident Corp.,* 2006 U.S. Dist. LEXIS 71020

*Leonor v. Provident Life & Life & Accident Co.,* 790 F. 3d 682 (6th Cir., 2015)

*Gladstone, MD v. Provident Life & Acc. Ins. Co.,* 533 F. Supp. 2d 1227 (N.D. Ga. 2007).



EXHIBIT F

Case ID: 190404139

# CHART OF COMPANIES USING

# CLEARER DEFINITION

## *OF "TOTAL DISABILITY"*

## *(And Thus Reducing or Eliminating Ambiguity)*

### *(In Alphabetical Order)*

| | | |
|---|---|---|
| Aetna Life Insurance Co. | " . . . *wholly* and continuously disable the insured from date of accident and **prevent him from performing** *any and every duty* pertaining to his occupation; " | 1 |
| Aetna Life Insurance Co. | " . . . an insured partner is [totally disabled when] *unable . to perform each of the material duties* of the partner's regular occupation on a full-time basis." | 2 |
| American Gen. Life Ins. Co. | " . . . *complete inability* of the Insured Debtor to perform *any and every duty* of his occupation . . ." | 3 |
| Central National Life Ins. Co. | ". . . the *complete inability* of the Insured to engage in his regular occupation, . . ." | 4 |
| CIGNA | " . . means the Insured's *complete inability* during the first year thereof to perform every duty of his occupation. . ." | 5 |
| Continental Casualty Co. | ". . . *wholly* . . . prevented from performing **each and every duty** pertaining to his occupation." | 6 |
| Employers Life Ins. Co. | : . . . *complete inability* . . . to perform **every duty** pertaining to his occupation." | 7 |
| Federal Life Ins. Co. | ". . . *complete inability* . . . to perform *the duties* of his regular occupation." | 8 |

[1] *Heald v. Aetna Life Ins. Co.,* 340 Mo. 1143, 1149, 104 S.W.2d 379, 382 (1937)
[2] *Clarke v. Aetna Life Ins. Co.,* 2009 U.S. Dist. LEXIS 111400, at *6 (S.D.N.Y. Dec. 1, 2009)
[3] *Moheny v. Am. Gen. Life Ins. Co.,* 116 A. 3d 1123, 1127 (Pa Super. 2015)
[4] *Stout v. Cent. Nat'l Life Ins. Co.,* 522 S.W.2d 124, 126 (Mo. Ct. App. 1975)
[5] Johnson v. Watts Regulator Co.,1994 U.S. Dist. LEXIS 15799, at *2 (D.N.H. Oct. 1994)
[6] *Dittmar v. Cont'l Cas. Co., 50 N.J. Super. 593, 595, 143 A. 2d 249, 250, (1958)*
[7] *Laborde v. Emp'rs Life Ins. Co.,* 412 So. 2d 1301, 1302 (La. 1982)
[8] *Wollmann v. Fed. Life Ins. Co.,* U.S. App. LEXIS 10785 (6th Cir. 1974)



EXHIBIT
G

Case ID: 190404135

| | | |
|---|---|---|
| Guardian Life Insurance Co. | ". . . the **complete inability** of the Insured to engage in his regular occupation or profession." | 9 |
| Life Insurance Co. of North America | ". . .**complete inability** . . . to perform **every duty** of his occupation. | 10 |
| Lincoln National Life Ins. Co | ". . . the **complete inability** of the Insured to engage in the Insured's regular occupation." | 11 |
| Lumberman's Mut. Cas. Co. | ". . . **wholly** . . . prevents the insured from performing **all** the duties of his profession." | |
| Maryland Assurance Corp. | ". . . **wholly** disable and prevent him from performing **any and every kind of duty** pertaining to his occupation." | 12 |
| Monarch Life Insurance Co. | ". . . **complete inability** of the Insured to engage in his regular occupation." | 13 |
| National Casualty Company | ". . .**wholly** and continuously **disable and prevent** the Insured from performing **any and every duty** pertaining to his occupation . . ." | 14 |
| Nationwide Insurance Co. | "**. . . complete inability** to perform **any and every duty** of his regular occupation or employment . . ." | 15 |
| New York Life Isurance Co. | ". . . "the **complete inability** of the insured to perform **any and every duty** pertaining to his or her occupation." | 16 |
| Pacific Mutual Life Insurance Co. | "**. . . complete inability** of the insured due to sickness or injuries to perform **any and every duty** *pertaining to his occupation.*" | 17 |

[9]  *Rosenberg v. Guardian Life Ins. Co.*, 510 So. 2d 610, 611 (Fla. Dist. Ct. App. 1987)
[10]  *McClure v. Life Ins. Co. of N. Am.,* 84 F. 3d 1129, 1133 (9th Cir., 1996)
[11]  *Goldstein v. Lincoln Nat'l Life Ins. Co.*, 970 F. Supp. 598, 600 (E.D. Mich) 1997
[12]  *Md. Assurance Corp. v. Smith*, 286 Ky. 513, 514-15, 151 S.W.2d 409, 410 (1941)
[13]  *Niccoli v. Monarch Life Ins. Co.*, 36 N.Y.2d 892, 893, 334 N.E.2d 594 (1975)
[14]  *Austero v.National Cas. Co.*, 84 Cal. App. 3d 1,4 (1978)
[15]  *Rodgers v. Nationwide Ins. Co.*, 47 Ore. App. 843, 845, 615 P.2d 1090, 1091 (1980)
[16]  *Panepinto v. N.Y. Life Ins. Co.*, 90 N.Y.2d 717, 719, 665 N.Y.S.2d 385, 386, 688 N.E.2d 241, 242 (1997)
[17]  *Okon v. Pac. Mut. Life Ins. Co.*, 522 P.2d 747, 748 (Colo. App. 1974)



| | | |
|---|---|---|
| Paul Revere Insurance Co. | " . . . the *complete inability* of the individual to perform the substantial and material duties of his or her occupation." | 18 |
| Principal Life Ins. Co. | " . . . *complete inability* of the Insured due to Injury or Sickness to perform *any and every duty* . . ." | 19 |
| Prudential Insurance Co. | " . . . the *complete inability* of the Employee due to sickness or injury to perform *any and every duty* pertaining to his occupation. . ." | 20 |
| Reliance Standard Life Ins. Co. | " . . . cannot perform *each and every* material duty of his/her occupation." | 21 |
| Travelers Ins. Co. | " . . . *wholly* disable and **prevent him** from the prosecution of *any and every kind of business* pertaining to the **occupation** under which he is insured." | 22 |
| Travelers Ins. Co. | " . . . *wholly,* and continuously disable and **prevent the insured from performing** *any and every kind of duty* pertaining to his occupation ." | 23 |
| Travelers Ins. Co. | " . . . the *complete inability* of an Employee to engage in *any and every duty*. . ." | 24 |
| UNUM | " . . the insured *cannot perform each* of the material duties . . . of his regular occupation. . ." | 25 |
| Washington Nat'l Life Ins. Co. | " . . . *complete inability* . . . to perform *each and every duty* pertaining to his occupation. | 26 |

[18] *Fahringer v. Paul Revere Ins. Co.*, 317 F. Supp. 2d 504, 508 (D.N.J. 2003)
[19] *Rich v. Principal Life Ins. Co.*, 226 Ill. 2d 359, 362, 875 N.E.2d 1082, 1085 (2007)
[20] Russell v. Prudential Ins. Co., 437 F.2d 602, 604 (5th Cir. 1971)
[21] *Perri v. Reliance Standard Life Ins. Co.*, 1997 U.S. Dist. LEXIS 12741 (E.D. Pa. Aug. 19, 1997
[22] *Young v. Travelers' Ins. Co.*, 80 Me. 244, q3 A. 896, 896 (1888)
[23] *Matthews v. Travelers Ins. Co.*, 212 Kan. 292, 294, 510 P.2d 1315, 1317-18 (1973)
    *Clarke v. Travelers' Ins. Co.*, 94 Vt. 383, 387, 111 A. 449, 450 (1920)
[24] *Travelers Ins. Co. v. Solomon*, 454 S.W.2d 765, 766 (Tex. Civ. App. 1970)
[25] *Padilla v. Unum Provident,* 2007 U.S. Dist. LEXIS 97092, at *3 (D.N.M. Mar. 26, 2007)
[26] *Caporali v. Wash. Nat'l Life Ins. Co.*, 297 N.W.2d 517 (Wis. Ct. App. 1980)




EXHIBIT
**G**

The following cases show that The Equitable itself, or AXA thereafter, <u>in at least four states</u> (**Arizona, Georgia, Florida and Illinois**), defined "total disability" more precisely than defined in Dr. Bloom's policies, so as to eliminate or diminish any ambiguity as to its meaning:

| | | |
|---|---|---|
| AXA Equitable Life Insurance Co. | " . . . shall *wholly* and continuously **disable** the insured from date of accident *and prevent him from performing any and every duty pertaining to his occupation . . ."* | 1 |
| AXA Equitable Life Assurance Society | ". . . total disability" [is] *the complete inability* of the Insured, because of injury or sickness, to engage in the Insured's regular occupation." | 2 |
| Equitable Life Assurance Society of the United States | " . . The *complete inability* of the Insured, because of injury or sickness, to engage in the Insured's regular occupation. . ." | 3 |
| AXA Equitable Life Insurance Co. | " . . . shall *wholly* and continuously **disable** the insured from date of accident *and prevent him from performing any and every duty pertaining to his occupation . . ."* | 4 |

---

[1] *Laun v. AXA Equitable Life Ins. Co.*, 311 Ga. App. 646, 646, 716 S.E.2d 760, 761 (2011)

[2] *Heller v. Equitable Life Assurance Soc'y*, 833 F.2d 1253, 1255 (7th Cir. 1987) [from Illinois]

[3] *Norcia v. Equitable Life Assurance Soc'y of the United States*, 80 F. Supp. 2d 1047, 1049 (D. Ariz. 2000)

[4] *Blender v. AXA Equitable Life Ins. Co.*, 2013 U.S. Dist. LEXIS 172642, at *2 (S.D. Fla. Dec. 9, 2013)



EXHIBIT

Case ID: 0404135

## CERTIFICATE OF SERVICE

I, Jerrold V. Moss, Esq., do hereby certify that,

upon acceptance by the Prothonotary for filing,

a copy of this pleading

will be served upon Defendant by

Certified Mail, RRR

Addressed To

MARK PEARSON, President and CEO

AXA EQUJITABLE LIFE INSURANCE COMPANY

1290 Avenue of the Americas

New York, NY 10104



JERROLD V. MOSS, ESQ.

Case ID: 190404135